UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| EIRINI ZAGKLARA, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | No. 2:10-cv-445-GZS |
| | ) | |
| SPRAGUE ENERGY CORP., | ) | |
| | ) | |
| Defendant and Third-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LEOPARD SHIPPING, et al., | ) | |
| | ) | |
| Third-Party Defendants | ) | |

### MEMORANDUM DECISION ON MOTION TO EXCLUDE EXPERT REPORT AND RECOMMENDED DECISION ON MOTION FOR SUMMARY JUDGMENT

The defendant, Sprague Energy Corp., moves to exclude the report of the plaintiff's liability expert, Paul Zorich, and for summary judgment on all counts of the complaint. The third-party defendants join in the motion for summary judgment only. ECF No. 74. I grant the motion to exclude for purposes of ruling on the defendant's motion for summary judgment, and recommend that the court deny the motion for summary judgment. I further recommend that the trial judge should rule on the admissibility of Zorich's testimony at trial.

### I. Motion to Exclude

The defendant contends that Zorich's report was produced too late and lacks reliability. Defendant Sprague Energy Corp.'s Motion to Exclude Plaintiff's Expert Report ("Motion to Exclude") (ECF No. 86) at 1. With respect to the first argument, the defendant asserts that the

1

theory presented in Zorich's report was presented for the first time on November 22, 2011, in response to the motion for summary judgment, despite a May 27, 2011, request (to which there was no response) to the plaintiff from counsel for the defendant for supplementation of the report from Zorich, initially supplied by the plaintiff on April 29, 2011. The defendant now contends that the opinions and conclusions contained in Zorich's November report "were not contained [in], or even foreshadowed by, Plaintiff's initial, insufficient, expert designation." *Id*. at 3.

The plaintiff responds that a "key missing piece of information" for Zorich's report was first provided to the plaintiff by the defendant on May 24, 2011, by photographs taken by an employee of the defendant "immediately after the incident" that gave rise to this action. Plaintiff's Opposition to: Defendant Sprague Energy Corp.'s Motion to Exclude Plaintiff's Expert Report ("Exclusion Opposition") (ECF No. 95) at 3, 4-5. This explanation does not account for the time elapsed between that production and the submission of Zorich's report on November 22, 2011.

The plaintiff also asserts that, at the time she designated Zorich as her expert witness, "the Defendant had failed to provide critical information (including but not limited to the [employee's] photographs) necessary in order for Mr. Zorich to form the opinions set in detail within his November report." *Id*. at 6. Any "critical information" other than the photographs is not identified by the plaintiff, and accordingly I cannot consider any argument based on this general assertion.

The comparison of the plaintiff's initial designation of Zorich with the report submitted with her opposition to the defendant's motion for summary judgment reveals that the later report can only be said to be within the scope of the initial designation because the initial designation was so broad in scope as to be uninformative. The designation that both sides apparently agree

2

was the initial designation of Zorich, Motion to Exclude at 2 & Exh. A, Exclusion Opposition at 4 & Exh. E, provides the following information about Zorich's opinions:

> Mr. Zorich is the Plaintiff's retained liability expert. . . . It is expected that Mr. Zorich will opine and testify regarding the liability in this case. Specifically, it is expected that Mr. Zorich will testify as to how, more likely than not, the power pack (a/k/a deck arrangement) began moving and crushed Ioannis Zagklaras on October 6, 2008. Mr. Zorich has not completed his Rule 26 report. It is anticipated that, as a factual basis of his opinions, Mr. Zorich will review and/or rely upon the following documents that have been provided to him: [list of 12 documents].
>
> All of these documents are in the Defendant's possession.

Plaintiff's First Supplemental Expert Disclosure With Respect to Liability (Exh. A to Motion to Exclude) at [1]. The designation also lists 5 "documents and information" upon which Zorich would rely or which he would review, including depositions of the defendant, Kostas Lamprou, and Jason Sellick; the report of Tate Austin, which was then subject to a motion to compel; and information that the plaintiff expected to obtain from the Portland Police Department. *Id*. at 2.

Zorich's 5-page report, dated November 18, 2011, includes the following opinions and conclusions:

> **Conclusion**
>
> Based upon the above set of facts my conclusions and opinions are as follows: it is patently clear the grievous injury to Capt. Zagklaras, occurring on board the M/V Calypso-N on 6 October, 2008 was caused by movement of the deck crane #2 operated by Sprague Energy Corp. Representatives of Sprague Energy Corp. failed to properly manage the hazards associated with operations of crane #2 and [this] was the principal cause of this incident. Capt. Zagklaras['s] accident was foreseeable and preventable had clear concise information been available and the use of cautionary directional information provided by Sprague Energy Corp. representatives.
>
> Given that Mr. Rankin was told to stop movement of his crane and given that he could not see Capt. Zagklaras, Mr. Bourgoin or the power pack, and given that he knew Capt. Zagklaras was working on equipment

3

>attached to the crane, Mr. Rankin should not have moved the crane at all unless he was given specific instructions to do so.
>
>**Opinion**
>
>In my opinion the movement of the power pack aft and outboard was caused by tension on the electrical cable generated by the movement of the crane boom to the center of the hopper. As the crane boom swung forward, the electrical cable caught upon the aft stanchion. As the boom continued to move towards 90 degrees (directly over the hopper) the aft stanchion acted as a fairlead, thereby pulling the cable reel directly to the aft stanchion and pinning Capt. Zagklaras between the power pack and the vessel's bulwarks at this location. Attached are diagrams illustrating how this occurred.
>
>Representatives of Sprague Energy Corp. that operate the shipboard cranes are responsible for all crane movements under their control. The apparent movements of crane #2 boom during the relocation of [the] electric power pack that grievously injured Capt. Zagklaras w[ere] under the responsibility of the crane operator. The unanticipated movement of crane #2 boom during the relocation of the power pack caused the electric cable to inadvertently engage the stern[]most stanchion located starboard of Capt. Zagklaras. Capt. Zagklaras was totally dependent on representatives from Sprague Energy Corp. for appropriate hazard management information concerning the operational aspects of the shipboard cranes and their ancillary components. On 6 October, 2008, the day of the incident resulting in the grievous injury to Capt. Zagklaras, he was not apprised of the hazardous circumstance existing when the crane boom is moved simultaneously with the power pack. Sprague Energy Corp. exhibited an outrageously cavalier attitude toward sharing information to assure management of the hazards that inherently exist in crane operations.

Report of Paul Z[o]rich, Exh. A to Exclusion Opposition (ECF No. 81-1), at 4-5.

The report does not specify which deposition transcripts Zorich read, or upon which he relied, nor does it refer to any other specific information or source of information made available to Zorich. *Id.* at 1.

Counsel for the defendant informed the plaintiff's attorney by an email dated May 27, 2011, that the initial designation of Zorich, made that day, was "totally inadequate" because it did not explain "how" Zorich contended that the accident at issue occurred. Email from Michael

4

Savasuk to David J. Berg, Exh. B to Motion to Exclude (ECF No. 86-2). The message also states that the defendant's attorneys "anticipate taking [Zorich's] deposition once you provide us with the necessary and required designation." *Id*. The defendant asserts that no response to this email was ever received, nor was any supplementation of the designation. Motion to Exclude at 2. The plaintiff does not dispute this assertion, nor does she contend that Zorich's report was provided to the defendant before it was submitted in support of the plaintiff's opposition to the motion for summary judgment.

The plaintiff's opposition to the motion to exclude recites a series of events that took place "[s]hortly after the Sellick photographs were produced" on May 24, 2011, involving the addition of the third-party defendant, Leopard Shipping Company, to this action. Exclusion Opposition at 5-6. None of these events excused the plaintiff from its discovery obligations with respect to Sprague.[1]

Most of the plaintiff's delay in providing Zorich's report is unexplained, and the explanation that she has given is unacceptable. The plaintiff nonetheless seeks to excuse her disregard of the requirements of Fed. R. Civ. P. 26(a) and this court's scheduling order by contending that her "failure . . . to fully disclose Mr. Zorich's testimony is harmless[,]" because "[t]his case is currently not on any trial list and discovery in connection with the Third Party Defendant . . . has not even begun. There has been and there remains adequate time for the Defendant to depose Mr. Zorich and prepare a defense." *Id*. at 6.

---

[1] The plaintiff's recitation includes an assertion that "[o]n 8/12/11 this Court entered an Order staying all deadlines. (Doc. 52)[.]" Exclusion Opposition at 5. By the plaintiff's own recounting, the discovery deadline applicable to the plaintiff and Sprague had expired two weeks after June 21, 2011, so there was no discovery deadline or other deadline applicable to the plaintiff's duty to provide a full expert designation at the time of the court's procedural order addressing the defendant's notice of intention to file a motion for summary judgment. Procedural Order (ECF No. 52).

This breezy dismissal of the possibility of prejudice to the defendant ignores the fact that the plaintiff is now attempting to avoid the entry of summary judgment by surprising the defendant with expert opinion evidence that should have been revealed to the defendant long before this court's deadline for the filing of motions for summary judgment approached. The possibility of additional discovery time for the third-party defendant does not mean that the original parties may therefore also continue to engage in discovery from each other.[2] The prejudice to the defendant from the timing of the plaintiff's first disclosure of her expert's report is clear. A plaintiff is not entitled to turn the summary judgment process into an empty exercise by withholding evidence that might allow her to avoid the entry of summary judgment until the defendant's motion for summary judgment has been filed. *See, e.g., Sterling Merch., Inc. v. Nestlé, S.A.*, 656 F.3d 112, 126 (1st Cir. 2011); *Lohnes v. Level 3 Comm'ns, Inc.*, 272 F.3d 49, 59-60 (1st Cir. 2001).

Summary judgment practice by ambush is no more to be favored than is trial by ambush.

As this court has noted, when a party fails to comply with this court's discovery timetable, "the district court has the authority to impose a condign sanction (including the authority to preclude late-disclosed expert testimony)." *Minott v. Smith*, No. Civ. 03-10-PH, 2003 WL 22078070, at *3 (D. Me. Sept. 5, 2003). In this case, the plaintiff's failure to reveal her belatedly proffered expert evidence is neither substantially justified nor harmless. *See Poulis-Minott v. Smith*, 388 F.3d 354, 358 (1st Cir. 2004). The motion to exclude the report is granted, as to its use by the plaintiff in opposition to the motion for summary judgment. The

---

[2] The plaintiff asserts that "counsel for all three parties agreed" in a telephone conference on June 30, 2011, "to hold off on conducting deposition[s] until counsel for Leopard filed his Answer and got up to speed on the case and was ready to proceed with discovery." Exclusion Opposition at 5 (emphasis in original). To the extent that this is meant to assert that counsel for the defendant agreed to extend the general discovery deadline for the plaintiff, it falls short. In addition, the authority cited for the assertion is "Affidavit of David F. Anderson (Attached hereto as Ex. 'H')[,]" *id*., but no such affidavit was filed with the plaintiff's opposition. There is no Exhibit H to that document. (ECF No. 95).

propriety of its use at trial, should one occur, is a matter best reserved for ruling by the judge who will preside at trial.

## II. Motion for Summary Judgment

### A. Applicable Legal Standard

#### 1. Fed. R. Civ. P. 56

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Santoni v. Potter*, 369 F.3d 594, 598 (1st Cir. 2004). "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party." *Rodríguez-Rivera v. Federico Trilla Reg'l Hosp. of Carolina*, 532 F.3d 28, 30 (1st Cir. 2008) (quoting *Thompson v. Coca-Cola Co.*, 522 F.3d 168, 175 (1st Cir. 2008)). "A fact is material if it has the potential of determining the outcome of the litigation." *Id.* (quoting *Maymi v. P.R. Ports Auth.*, 515 F.3d 20, 25 (1st Cir. 2008)).

The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In determining whether this burden is met, the court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. *Santoni,* 369 F.3d at 598. Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999) (citation and internal punctuation omitted); Fed. R. Civ. P. 56(c). "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to

generate a trialworthy issue warrants summary judgment to the moving party." *In re Spigel*, 260 F.3d 27, 31 (1st Cir. 2001) (citation and internal punctuation omitted).

## 2. Local Rule 56

The evidence that the court may consider in deciding whether genuine issues of material fact exist for purposes of summary judgment is circumscribed by the local rules of this district. *See* Loc. R. 56. The moving party must first file a statement of material facts that it claims are not in dispute. *See* Loc. R. 56(b). Each fact must be set forth in a numbered paragraph and supported by a specific record citation. *See id*. The nonmoving party must then submit a responsive "separate, short, and concise" statement of material facts in which it must "admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts[.]" Loc. R. 56(c). The nonmovant likewise must support each denial or qualification with an appropriate record citation. *See id*. The nonmoving party may also submit its own additional statement of material facts that it contends are not in dispute, each supported by a specific record citation. *See id*. The movant then must respond to the nonmoving party's statement of additional facts, if any, by way of a reply statement of material facts in which it must "admit, deny or qualify such additional facts by reference to the numbered paragraphs" of the nonmovant's statement. *See* Loc. R. 56(d). Again, each denial or qualification must be supported by an appropriate record citation. *See id*.

Failure to comply with Local Rule 56 can result in serious consequences. "Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted." Loc. R. 56(f). In addition, "[t]he court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment" and has "no independent duty to

8

search or consider any part of the record not specifically referenced in the parties' separate statement of fact." *Id*.; *see also, e.g., Sánchez-Figueroa v. Banco Popular de P.R.*, 527 F.3d 209, 213-14 (1st Cir. 2008); Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion[.]").

## B. Factual Background

The parties' respective statements of material facts submitted pursuant to Local Rule 56[3] include the following undisputed material facts.

The plaintiff, Eirini Zagklara, a resident of Athens, Greece, is the personal representative of the estate of her husband, Ioannis Zagklaras. Defendant's Statement of Material Facts Not in Dispute ("Defendant's SMF") (ECF No. 71) ¶ 2; Plaintiff's Statement of Material Facts and Re[sp]onse to Defendant's Statement of Material Facts (starting at 13, "Plaintiff's Responsive SMF") (ECF No. 82) ¶ 2. At all relevant times, the defendant owned and operated the Merrill Marine Terminal in Portland, Maine ("Terminal"). *Id*. ¶ 3.

The M/V CALYPSO N is a break bulk carrier that was owned by third-party defendant Leopard Shipping Company, and operated by third-party defendant Nomikos Transworld Maritime Agencies, S.A. *Id*. ¶ 4. On or about October 4, 2008, the M/V CALYPSO N arrived at Merrill Marine Terminal to discharge rock salt for storage at the Terminal. *Id*. ¶ 5. At that time, the vessel was time chartered to Armada Singapore Pte., Ltd. of Singapore. *Id*. ¶ 6. At the time of the incident that gave rise to this action, the vessel had five cranes, starting with Number 1 up

---

[3] The defendant, the moving party, has filed a document entitled "Statement of Additional Material Facts Not in Dispute." ECF No. 89. As the plaintiff points out, Plaintiff's Response to: Defendant's Statement of Additional Material Fact[s] Not in Dispute (ECF No. 92), at 1-2, this court's local rule governing motions for summary judgment does not contemplate the moving party's submission of new, additional facts along with its reply memorandum of law. The defendant here has done so, without seeking leave of court. The statement of additional facts (ECF No. 89) is stricken from the record.

forward, leading aft to Number 5. *Id*. ¶ 7. The Number 1 hold was the most forward, leading aft to the Number 5 hold, which was the most aft, in front of the vessel's house. *Id*.

In general, on a break bulk carrier, salt is discharged from a piece of equipment called a "bucket" or "grab" into a hopper on the dock which transfers the salt into a truck. *Id*. ¶ 8.[4] The bucket is controlled by a pulley or, in nautical terms, a block. *Id*. A wire running through the block is connected to a crane. *Id*. This wire raised and lowers the grab. *Id*. The crane is affixed to the ship, as is the wire leading from the top of the crane through the pulley. *Id*. Another wire leading from the forward end of the bucket is a separation of "Y" wires, leading to one wire that again goes up to a block on the crane, and back down to a machine on deck. *Id*. ¶ 9. The machine on deck, and the power cable leading from it back to the bucket, control the opening and closing of the bucket, and also prevent the bucket from turning while in operation. *Id*. The deck equipment from which the power cable leads is called a "deck arrangement" or a "power reel" or a "power pack." *Id*.

From the cab on the crane, the crane operator can raise or lower the boom of the crane. *Id*. ¶ 11. He or she can also raise or lower the wire attached to the grab on the crane and turn the crane left or right. *Id*.

Captain Zagklaras was employed as a port captain by Armada (Greece) CO., Ltd., an affiliate of Armada Singapore. *Id*. ¶ 12. His duties as port captain were to control and supervise the discharging of salt from the M/V CALYPSO N. *Id*. ¶ 13.[5] Captain Zagklaras was responsible for Armada's equipment, including the grabs and the power reels. *Id*. ¶ 14. He arrived in Portland prior to the ship's docking on October 4, 2008. *Id*. ¶ 15. The grabs and

---

[4] I repeat in this paragraph only those portions of paragraphs 8 and 9 of the defendant's statement of material facts not denied by the plaintiff.

[5] The plaintiff's "qualified denial" of this paragraph of the defendant's statement of material facts, Responsive SMF ¶ 13, is not a response allowed under Local Rule 56. In addition, the response does not cite any support in the record and must be disregarded for that reason as well.

power reels to be utilized aboard the M/V CALYPSO N to discharge the salt also arrived, by way of container delivered by truck at the request of an Armada entity, before the vessel docked. *Id*. ¶ 16.

After the M/V CALYPSO N arrived, docked, and was cleared by Customs, Captain Zagklaras and the ship's crew, using the ship's cranes, brought the grabs and power reels aboard the vessel and proceeded to connect them to the cranes. *Id*. ¶ 17. During the course of the discharge, Captain Zagklaras was at all times in charge of the power reel boxes. *Id* ¶ 18.[6] From time to time during the course of the discharge, it was necessary to move the power reel boxes because there were stanchions on the railing of the deck that caused obstructions for the wire with the boom. *Id*. ¶ 19.

Whenever it was necessary to move the power reel boxes, Captain Zagklaras was responsible for moving and positioning this equipment. *Id*. ¶ 20.[7] Captain Zagklaras used a pallet jack to move the power reels from place to place on the deck of the ship. *Id*. The pallet jack did not belong to the defendant. *Id*.

At all relevant times on October 6, 2008, the relative position of the hopper, the set of stanchions, and the No. 2 crane turret involved in the incident remained constant. Plaintiff's Statement of Material Facts and Response to Defendant's Statement of Material Facts ("Plaintiff's SMF") (ECF No. 82) ¶ 3; Defendant's Response to Plaintiff's Statement of Material Facts ("Defendant's Responsive SMF") (ECF No. 88) ¶ 3. The trim of the vessel was monitored and maintained during the course of the discharge. *Id*. ¶ 4. At the time of the accident, the

---

[6] The plaintiff's purported denial of this paragraph is contradicted by the third sentence of her response. Plaintiff's Responsive SMF ¶ 18. I have adopted the words preferred by the plaintiff, replacing the words "responsible for" with the words "in charge of."

[7] The plaintiff's response to this paragraph of the defendant's statement of material facts, a "qualified denial," is not contemplated by Local Rule 56. In addition, the assertion that the plaintiff has "absolutely no knowledge" about a particular factual assertion, Plaintiff's Responsive SMF ¶ 20, cannot be deemed a supported denial of that assertion.

starboard side deck of the vessel tilted just slightly outboard with just enough angle for water to run off the deck. *Id*. The deck of the vessel was level and it was not rocking. *Id.*

On October 6, 2008, Captain Zagklaras was injured while attempting to move one of the power reel boxes on the deck of the vessel. Defendant's SMF ¶ 22; Plaintiff's Responsive SMF ¶ 22. Randy Bourgoin, one of the Sprague night shift crew leaders, was on the deck of the vessel, approximately 8 to 10 feet away from Captain Zagklaras when the injury occurred. *Id*. ¶ 23. Other Sprague employees with knowledge of the incident are Jody Bradeen and Ed Rankin. *Id*. ¶ 24.[8]

At the time Captain Zagklaras was asked to move the Number 2 cable reel, Rankin was operating the No. 2 crane under the direction of Bourgoin, who was the Sprague foreman working on the deck of the vessel. Plaintiff's SMF ¶ 6; Defendant's Responsive SMF ¶ 6. Bourgoin had a radio with which he could communicate with and provide instructions to Rankin. *Id*. Rankin had restricted visibility of the starboard deck adjacent to the No. 2 crane turret structure from the cab of the No. 2 crane. *Id*.

Upon arriving on deck, Captain Zagklaras asked Bourgoin to position the boom of the No. 2 crane so that it was pointing outboard and to the stern. *Id*. ¶ 7. Once the crane boom was in position, the horizontal angle of the boom relative to the centerline of the vessel was approximately 45 degrees from the centerline of the vessel pointing outward and to the stern. *Id*.

Immediately before the incident, the plan was to stop discharging from the No. 1 hold and move to the No. 2 hold. Defendant's SMF ¶ 25; Plaintiff's Responsive SMF ¶ 25. This required the power reel to be moved from its location closer to the No. 1 hold to a location closer

---

[8] The plaintiff purports to deny this paragraph of the defendant's statement of material facts, but the denial only addresses portions of the paragraph that are not repeated here. Plaintiff's Responsive SMF ¶ 24.

to the No. 2 hold. *Id.* When Rankin moved the crane into the position requested by Captain Zagklaras, Bourgoin asked him to stop. *Id.* ¶ 27.[9]

The levers used to operate the crane are equipped with safety hinges which, when employed, come down over the levers, locking them so that they cannot be moved; the boom cannot be moved in any direction while the safety hinges are in place. *Id.* ¶ 28. Both the boom and the cable are locked into place and rendered immobile. *Id.* The levers are locked so that the boom and cable will not move if the levers are hit accidentally. *Id.*

Once the boom of the crane was in the position specified by Captain Zagklaras, he moved forward up the deck of the vessel to retrieve the pallet jack. *Id.* ¶ 30. He returned with the pallet jack and inserted the two prongs of the pallet jack into the underside of the power reel. *Id.* ¶ 31. At this time, the cable reel attached to the No. 2 crane was located on the starboard deck walkway at a location just outboard of the aft hatch cover of the No. 2 hold. Plaintiff's SMF ¶ 8; Defendant's Responsive SMF ¶ 8. Captain Zagklaras himself was also aft of the power pack, and he began to lift the power reel off the deck. Defendant's SMF ¶31; Plaintiff's Responsive SMF ¶ 31. As soon as he lifted the power reel off the deck, the pallet jack "took off" in an outward starboard aft direction, pinning Captain Zagklaras between the power reel and the deck's siding. *Id.* ¶ 32.[10] Captain Zagklaras yelled loudly. Plaintiff's SMF ¶ 11; Defendant's Responsive SMF ¶ 11.

Immediately after the incident, Bourgoin squeezed his body between the starboard bulwarks and the cable reel and tried to move the cable reel away from Captain Zagklaras's

---

[9] The plaintiff's response to this paragraph of the defendant's statement of material facts begins with "qualified denial," but goes on to specifically admit the sentence reproduced above. Plaintiff's Responsive SMF ¶ 27.

[10] The plaintiff begins her response to this paragraph of the defendant's statement of material facts with "Denied," but she admits all of the facts included in that paragraph that have been reproduced above. Plaintiff's Responsive SMF ¶ 32.

13

body. *Id*. ¶ 17.[11] Bourgoin called for help and moved the cable reel away from Captain Zagklaras, laying him on the deck, although the sequence of these events is disputed. *Id*. Eventually, Captain Zagklaras was freed and transported to the hospital. Defendant's SMF ¶ 33; Plaintiff's Responsive SMF ¶ 33.

After the incident, Captain Zagklaras told his wife that he did not see the crane operator move the crane improperly and did not remember exactly what happened at the time of the incident. *Id*. ¶ 34.[12]

### C. Discussion

The parties agree that maritime law applies to this case. Defendant's Combined Motion and Memorandum of Law in Support of Motion for Summary Judgment ("Motion") (ECF No. 70) at 9; Plaintiff's Opposition to: Defendant[] Sprague Energy Corp.'s Motion for Summary Judgment ("Opposition") (ECF No. 81) at 15. The defendant contends that the plaintiff cannot establish negligence under maritime law. Motion at 10-15.

The complaint in this action that was removed from state court by the defendant alleges negligence and wrongful death in seven counts. Plaintiff's Complaint and Jury Trial Demand ("Complaint") (ECF No. 1-2). A wrongful death claim under general maritime law also requires proof of negligence. *See generally Norfolk Shipbuilding & Drydock Corp. v. Garris*, 532 U.S. 811, 820 (2001). In order to establish negligence under maritime law, a plaintiff must "demonstrate that there was a duty owed by the defendant to the plaintiff, breach of that duty, injury sustained by the plaintiff, and a causal connection between the defendant's conduct and

---

[11] The parties disagree on minor details of this paragraph of the plaintiff's statement of material facts. Defendant's Responsive SMF ¶ 17. The differences have no bearing on the outcome of the pending motion. Where necessary, I have chosen the wording of the non-moving party, the plaintiff, so that necessary facts may be included in the record.

[12] The plaintiff's response to this paragraph of the defendant's statement of material facts begins with a "qualified denial," a response that is not contemplated by this court's Local Rule 56. Plaintiff's Responsive SMF ¶ 34. In any event, she challenges only the wording of the paragraph, not its substance. I have adopted the language the plaintiff quotes from the cited deposition transcript.

the plaintiff's injury." *Great Am. Ins. Co. v. Pride*, __F.Supp.2d __, 2012 WL 913253, at *8 (D. Me. Mar. 16, 2012) (citation omitted).

### 1. Existence of a Duty

The defendant first contends that it owed no duty to Captain Zagklaras "with respect to the placement, movement or maintenance of the power reel box," with respect to the maintenance of the pallet jack used to move the power reel box, or to intervene to prevent Captain Zagklaras from moving the power reel. Motion at 10-11, 13-14. The plaintiff responds that she does not rely on any such duty, but rather only on the duty of the defendant's employees, Bourgoin and Rankin, to exercise reasonable care in the operation of the No. 2 crane. Opposition at 15-16. She asserts that the evidence "overwhelmingly supports" her contention that Rankin failed to secure the crane with safety hinges and negligently swung it forward, causing the accident. *Id*. She acknowledges that Rankin has testified to the contrary, *id*. at 16, thus establishing, she contends, a disputed issue of material fact that may only be resolved through trial.

In response, the defendant does not continue to argue that no duty existed, Reply Memorandum of Law in Further Support of Sprague's Motion for Summary Judgment ("Reply") (ECF No. 87) at 2, so that element of the negligence test may no longer serve as the basis for summary judgment in favor of the defendant.

### 2. Breach of Duty

The defendant next argues that "the evidence is undisputed that Mr. Rankin positioned the crane boom as directed by Captain Zagklaras, locked its position, and never moved it again. Thus, even if some duty were owed, there was no breach." Motion at 12. The plaintiff, however, contends that this evidence is disputed. Specifically, she asserts:

15

> Here the evidence from Defendant's employees Grinnell and Bradeen that the crane boom was in a substantially different position at the time of the injury[] th[a]n it was ten seconds prior to the injury[] overwhelmingly supports Plaintiff's contention that Rankin[] failed to secure his crane with Safety Hinges[] when advised to stop and negligently swung crane #2 forward roughly 45 degrees, past the stanchions rising out of the starboard bulwarks. There is evidence from which a reasonable juror could conclude that Rankin swung the boom of crane #2 from 45 degrees to 90 degrees (directly above the hopper) while he was aware that Zagklaras was working on equipment which was attached to the boom, while he was unable to see Zagklaras, Bourgoin, and the power pack, while he was aware of the risk of the cable from the power pack becoming hung up on the vessel's structure[,] and after he was instructed by his supervisor to stop and hold the crane in its then current position.

Opposition at 15-16. She cites directly to deposition testimony and exhibits to support this presentation, *id.* at 10, rather than to either of the parties' statements of material facts.

This makes it necessary for the court to parse the plaintiff's statement of material facts, because only facts properly put before the court in this document may be considered in ruling on a motion for summary judgment. *See* Local Rule 56(f). The following factual assertions in the plaintiff's statement of material facts are admitted by the defendant and are relevant to the argument quoted above:

> At the time Mr. Zagklaras was asked to move the #2 cable reel, Sprague's employee, Mr. Rankin, was operating crane #2 under the direction of Mr. Bourgoin who was the Sprague foreman (crew leader) working on the deck of the vessel. Mr. Bourgoin had a radio with which he could communicate and provide instructions to Mr. Rankin and other Sprague employees. In the cab of crane #2, Mr. Rankin had restricted visibility of the starboard deck adjacent to the #2 crane turret structure. Plaintiff's SMF ¶ 6 (citations omitted).
>
> Upon arriving on deck, Zagklaras asked the foreman, Bourgoin, to position the boom of crane #2 such that it was [in] a position pointing outboard and to the stern. Zagklaras provided instructions to Bourgoin regarding positioning of Crane 2's boom which in turn w[]ere relayed via radio to the crane 2 operator Rankin. Once the crane boom was in the position requested by Zagklaras, Bourgoin ordered the Crane operator, Rankin, to stop. Rankin stopped after being ordered to do so

16

>by Bourgoin. The horizontal angle of the boom relative to the centerline of the vessel after the boom had been stopped was approximately 45 degrees from the centerline of the vessel pointing outboard and to the stern. Plaintiff's SMF ¶ 7 (citations omitted).
>
>After lifting the power pack with [the] pallet jack, Zagklaras started pulling the power pack backwards. Thereafter the cable reel started moving aft and outboard. Plaintiff's SMF ¶ 11 (citations omitted).
>
>Zagklaras remained on his feet as the cable reel moved . . . . There was a bang loud enough to be heard on the dock and then the cable reel and Zagklaras' feet stopped moving. Zagklaras was crushed between the cable reel and the bulwarks of the vessel . . . . Plaintiff's SMF ¶ 12 (citations omitted).
>
>Immediately prior to Zagklaras' injury, the boom of Crane #2 was pointing aft and outboard at an angle of approximately 45-30 degrees relative to the center line of the vessel in the approximate position depicted in the drawing marked "Frye Ex. 35." Plaintiff's SMF ¶ 13 (citations omitted).
>
>Upon hearing Bourgoin's call for assistance, the operator of another crane, Grinnell[,] secured his crane, climbed down and immediately went to the location of the accident to help. Crane #2 was not moved at all after Zagklaras' accident and prior to Grinnell arriving at the scene of the accident. While approaching the accident site, Grinnell observed that the boom of the crane was pointing directly overboard . . . at a 90 degree angle relative to the centerline of the vessel. The operator of Crane #2, Rankin[,] did not move the boom of Crane #2 after Zagklaras' injury and prior to the arrival of Grinnell. Plaintiff's SMF 18 (citations omitted).

Thus, the defendant has admitted for purposes of the instant motion that the angle of the No. 2 crane's boom relative to the centerline of the vessel appeared to have changed from a point in time immediately before the accident to a point in time immediately after the accident.

The critical problem, however, for the plaintiff's case is the need for evidence supporting a causal connection between this change in the No. 2 crane's boom angle and Zagklaras' injury. The plaintiff asserts, without discussion or citation of authority, that "there is a genuine issue of material fact as to whether . . . the actions of Rankin caused Zagklaras' injuries." Opposition at 16. The plaintiff's professed reliance only on the testimony of Grinnell

and Bradeen, Opposition at 15, further exacerbates the matter, since they are simple percipient witnesses who offer no testimony as to causation.

The only paragraphs providing causation evidence included in the plaintiff's statement of material facts cite only the Zorich report, Plaintiff's SMF ¶¶ 26-29, which has been excluded from consideration in connection with the motion for summary judgment by my ruling on the defendant's motion to exclude it. Even so, it appears to me that the plaintiff does not need expert opinion evidence to establish causation on her theory that the No. 2 crane moved, causing the cable or wire, which was caught on a stanchion, to pull the power reel toward the railing, pinning Zagklaras. That theory is founded on simple principles of mechanics. Those principles are well within the ken of an ordinary jury, should it find that the No. 2 crane to which the power reel was attached swung forward just before Captain Zagklaras was injured.

The defendant responds that the "testimony that Mr. Rankin locked [the] crane's controls and did not move the crane" is "uncontroverted," Reply at 2 (emphasis omitted), so that it is nonetheless entitled to summary judgment. However, the fact that Rankin did not move the crane himself is not necessarily sufficient to foreclose any movement by the crane. In addition, the plaintiff has proffered evidence, some of which is disputed by the defendant, that the boom of the crane did move at the time of the accident. Plaintiff's SMF ¶¶ 12-16, 18. A reasonable jury could conclude that the accident occurred as the plaintiff now alleges.

The defendant also asserts that "the height of the stanchions . . . was such that the boom and mechanical wire were able to swing unobstructed, rend[er]ing [the plaintiff's] theory as to how the incident occurred impossible." Reply at 7. The authority cited for this assertion, *id*., is Exhibit A to the Affidavit of Randy Bourgoin (ECF No. 90), which has no Exhibit A. Assuming that the defendant meant to refer to Exhibit B to this affidavit, a photograph, and assuming

...

*arguendo* that this factual assertion had been properly included in the defendant's statement of material facts, rather than being mentioned for the first time in its reply memorandum, it is not possible to tell from the photograph, without more, that the stanchions were in fact too short for events to have transpired as the plaintiff's theory supposes. On the showing made, therefore, the defendant is not entitled to summary judgment.

### III.  Conclusion

For the foregoing reasons, the defendant's motion to exclude (ECF No. 86) is **GRANTED**, and I recommend that the defendant's motion for summary judgment be **DENIED.**

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 2nd day of July, 2012.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge