# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | | |
|---|---|---|
| EIRINI ZAGKLARA, individually and as personal representative of the estate of IOANNIS ZAGKLARAS, | ) ) ) ) | |
| Plaintiff, | ) ) | Docket no. 2:10-cv-445-GZS |
| v. | ) ) | |
| SPRAGUE ENERGY CORP., | ) ) | |
| Defendant & Third Party Plaintiff, | ) ) ) | |
| v. | ) ) | |
| LEOPARD SHIPPING et al., | ) ) | |
| Third Party Defendants. | ) | |

## ORDER ON MOTION FOR APPLICATION OF GENERAL MARITIME LAW

Before the Court is Plaintiff's Motion for Application of General Maritime Law (ECF No. 130). Defendant Sprague Energy Corp. ("Defendant" or "Sprague") has filed an opposition to the Motion (ECF No. 144) arguing that Maine state law applies with respect to determination of Plaintiff's damages. For reasons explained herein, the Court GRANTS the Motion.

1

**I.   LEGAL STANDARD**

There is no dispute in this case that Plaintiff's claims fall within the Court's admiralty jurisdiction.[1] "With admiralty jurisdiction . . . comes the application of substantive admiralty law. . . . The exercise of admiralty jurisdiction, however, does not result in automatic displacement of state law." Yamaha Motor Corp. v. Calhoun, 516 U.S. 199, 206 (1996) (internal citations and quotations omitted).  In fact, in Yamaha, the Supreme Court expressly indicated that the damages available for wrongful death of a nonseafarer on navigable waters could be "properly governed by state law." Id. at 216.  More recently, the Supreme Court also has affirmed that there is a general maritime law remedy for negligence resulting in the wrongful death of nonseamen in state territorial waters. See Norfolk Shipbuilding & Drydock Corp. v. Garris, 532 U.S. 811, 820 (2001).

As the First Circuit generally explained in Southworth Mach. Co., Inc. v. F/V COREY PRIDE, 994 F.2d 37 (1st Cir. 1993):

> [C]laimants in an admiralty case are not restricted to maritime relief but may also pursue remedies provided by state law.  However, the extent to which state law may be used to remedy maritime injuries is constrained by a so-called 'reverse-*Erie*' doctrine which requires that the substantive remedies afforded by the States conform to governing federal maritime standards.  Thus, where the subject-matter falls within the admiralty jurisdiction, state law may 'supplement' federal maritime law but may not directly contradict it.

Id. at 41 (internal citations and quotations omitted); see also, e.g., Rogers v. Coastal Towing, L.L.C., 723 F. Supp. 2d 929, 936 (E.D. La. 2010) (finding general maritime law preempted application of

---

[1] The Court notes that the torts alleged in this case readily meet the location test and the nexus test required for application of maritime law.  See, e.g. Transamerica Premier Inc. Co. v. Ober, 107 F.3d 925, 929 n. 5 (1st Cir. 1997) (explaining the two tests for maritime torts and quoting Carey v. Bahama Cruise Lines, 864 F.2d 201, 207 (1st Cir. 1988)).

state rescuer doctrine upon finding that the rescuer doctrine interfered "with the proper harmony and uniformity of the general maritime law").

## II. BACKGROUND

In this case, Plaintiff has the following pending claims against Defendant Sprague Energy, which operates the Merrill Marine Terminal: (1) a general maritime negligence survival action for the personal injuries Captain Zagklaras suffered prior to his death (Count I), (2) a wrongful death claim seeking pecuniary support for his surviving spouse (Count III), (3) a separately stated wrongful death claim seeking medical and funeral expenses (Count IV), (4) a separately stated claim by Mrs. Zagklara for emotional distress and loss of society as a result of the death of her husband (Count V), and (5) a claim seeking to recover for conscious pain and suffering experienced by Captain Zagklaras between the time of the accident and his death (Count VII). As the parties agree, these claims all arise from an accident that occurred on October 6, 2008, when Captain Zagklaras was aboard the M/V CALYPSO while the ship was discharging cargo at the Merrill Marine Terminal in Portland, Maine. Captain Zagklaras died on March 13, 2009. Under this factual scenario, the parties do not dispute Captain Zagklaras is deemed a nonseafarer pressing claims for torts that occurred in territorial waters.[2] Given this categorization, it is important to note that this case falls outside the Jones Act, 46 U.S.C. § 30104, the Death on the High Seas Act, 46 U.S.C. §§ 30301-30306, and the Longshore & Harbor Worker's Compensation Act, 33 U.S.C. § 901 *et seq.* Rather, Plaintiff has pled

---

[2] See Pl. Motion for Application of General Maritime Law (ECF No. 130) at 4 & Def. Response (ECF No. 144) at 3-4. In describing Captain Zagklaras as a "nonseafarer," the Court adopts the definition laid out by the Supreme Court in Yamaha and notes that neither Plaintiff nor Defendant has disputed this label. See Yamaha, 516 U.S. 205 n.2 ("By 'nonseafarers,' we mean persons who are neither seamen covered by the Jones Act, 46 U.S.C.App. § 688 (1988 ed.), nor longshore workers covered by the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901 *et seq.*").

all of her claims under general maritime law and Maine state law.

### III. DISCUSSION

With the just discussed legal standard in mind, the parties, while agreeing that general maritime law governs liability, disagree to what extent Maine law may supplement the rules governing the remedies and damages that Plaintiff may seek at trial. As it relates to the upcoming jury trial, the briefing on the present motion queues up the following specific questions: (1) Whether the surviving spouse Plaintiff in this case may state a general maritime claim for loss of society as stated in Count V? (2) Whether the collateral source rule applies to Count IV? (3) Does the Maine Wrongful Death Act in any way supplement Plaintiff's wrongful death claims? and (4) Whether general maritime law provides the applicable comparative negligence rule? The Court considers each of these questions in turn.

**A.  Count V: Emotional Distress & Loss of Society Claims Brought by Mrs. Zagklara**

Assuming for the sake of argument that general maritime law governs Plaintiff's claims (which is the premise of the pending motion), Defendant maintains that general maritime law does not allow Mrs. Zagklara to press a claim for loss of society as asserted in Count V. In connection with this argument, both sides draw the Court's attention to the Supreme Court's decision in Sea-Land Servs., Inc. Gaudet, 414 U.S. 573 (1974), which expressly allowed recovery for loss of society by the dependent spouse of a longshoreman via a general maritime wrongful death action. As both sides acknowledge, Gaudet was superceded by statutory amendments to the Longshore & Harbor Worker's Compensation Act ("LHWCA"), 33 U.S.C. § 955(b). See Miles v. Apex Marine Corp.,

498 U.S. 19, 31 n.1 (1990) (explaining that the amendments to LHWCA "have rendered Gaudet inapplicable on its facts"). Defendant argues that the combination of these amendments and the Supreme Court's subsequent acknowledgement of them in Miles renders Gaudet essentially overruled. See id. at 31 ("The holding of Gaudet applies only in territorial waters, and it applies only to longshoremen.") Plaintiffs, on the other hand, argue that because the LHWCA does not control this action, Gaudet remains applicable to this case and expressly allows Plaintiff's loss of society claim to proceed under general maritime law. In the Court's opinion, Defendant's argument reflects an overstatement of the impact of the Miles decision. See, e.g., Atlantic Sounding Co. Inc. v. Townsend, 557 U.S. 404, 419-24 (2009).

Nonetheless, as other courts of have recognized, "[t]here is reason to doubt the continued applicability of Gaudet." In re Am. River Transp. Co., 490 F.3d 351, 356 n. 27 (5th Cir. 2007) (collecting cases struggling to reconcile the precedential value of Gaudet given the language of Miles); see also In re Maryland Marine, Inc., 641 F. Supp. 2d 579, 582 & 585 (E.D. La 2009) (concluding that "loss of society damages are not recoverable by representatives of nonseafarers killed in territorial waters under the general maritime law" but nonetheless indicating a willingness to present a loss of society claim to the jury due to "movement of the law in this area"). In the absence of any express precedent overruling Gaudet or otherwise indicating that general maritime law does not recognize a loss of society claim by a *dependent* surviving spouse, the Court will not prohibit Plaintiff from presenting her loss of society claim under general maritime law at the upcoming jury trial. Cf. Tucker v. Fearn, 333 F.3d 1216, 1223 & n.10 (11th Cir. 2003) (holding that "nondependent survivors of nonseamen cannot recover loss of society damages under general maritime law). Even in the absence of a general maritime basis for her loss of society claim, the

Court notes that Plaintiff would be able to pursue loss of society damages under Maine law as a supplemental claim in accordance with 18-A M.R.S.A § 2-804, a statute that was duly pled in her Complaint.[3]  See Yamaha, 516 U.S. at 216.

In short, to the extent that Plaintiff sought to proceed to trial with Count V as a loss of society claim seeking damages under general maritime law, Plaintiff's Motion is GRANTED over Defendant's proffered objections.

B.	Count IV: Collateral Source Rule

Specifically, with respect to Count IV, Defendant also argues against the application of the collateral source rule and asserts that Plaintiff should be barred from recovering medical bills that were incurred by Captain Zagklaras but were allegedly paid by his employer.  Defendant specifically asks the Court to exclude any evidence of Captain Zagklaras' medical costs at the upcoming trial.

Under maritime law or Maine law, the collateral source rule generally would apply to bar a tortfeasor from suggesting that the amount of damages awarded should be reduced because of payments received from a third party.  See, e.g., Hinton v. Outboard Marine Corp., D. Me. No. 1:09-cv-554-JAW, 2012 WL 21583 at *1 (D. Me. Jan. 24, 2012) (discussing the collateral source rule as "settled law" in Maine and collecting cases); Falconer v. Penn Maritime, Inc., 397 F. Supp. 2d 144, 147-50 (D. Me. 2005) (discussing the collateral source rule under maritime law);  Bickford v.

---

[3] See Compl. ¶32.  In filing the pending motion for application of general maritime law, it is unclear whether Plaintiff intended to forego her claims under Maine law to the extent pled in her Complaint.  The Court notes that if it were ultimately determined that Plaintiff was entitled to loss of society damages only under Maine law, the loss of society award would be subject to Maine's $500,000 cap on damages "for the loss of comfort, society and companionship of the deceased, including any damages for emotional distress arising from the same facts as those constituting the underlying claim."  18-A M.R.S.A. § 2-804(b).

Marriner, D. Me. No. 2:12-cv-17-JAW, 2012 WL 6727531 (D. Me. Dec. 28, 2012) (applying the collateral source rule to exclude evidence of MaineCare payments of medical bills when medical bills were sought as part of damages on a negligence claim brought under the Jones Act and general maritime law).

On the pretrial record presented, the Court will not exclude Plaintiff from presenting evidence of the medical bills incurred by Captain Zagklaras as a result of the accident at issue. Defendant is free to renew any objections it may have to the medical bill evidence presented at trial. See England v. Reinauer Transp. Companies, L.P., 194 F.3d 265, 273 (1st Cir. 1999) ("When a case is being heard in federal court, the evidentiary, as opposed to the substantive, aspects of the collateral source rule are governed by the Federal Rules of Evidence, particularly Rules 401, 402, and 403.") However, in accordance with this pretrial ruling, the collateral source rule applies with respect to third party payments of Captain Zagklaras' medical bills. As a result, Defendant shall not attempt to argue or inquire before the jury as to the source of any third party payments of Captain Zagklaras' medical bills.

**C.     Application of Maine Wrongful Death Act**

In opposing Plaintiff's Motion, Defendant argues for the application of Maine law, 18-A M.R.S.A. §§ 2-804 and 3-817 to the wrongful death claims that Plaintiff will press at trial. In relevant part, application of the Maine Wrongful Death statute would provide a $500,000 cap on damages for "for the loss of comfort, society and companionship of the deceased, including any damages for emotional distress arising from the same facts as those constituting the underlying

claim" 18-A M.R.S.A. § 2-804(b).[4] To the extent that Defendant seeks this damage cap as a supplement to general maritime law, the Court concludes that such a damage cap actually conflicts with the general maritime law. See Pike v. Woods Hole Oceanographic Inst., 233 F. Supp. 2d 198, 199 (D. Mass. 2002) (finding that a state law capping tort damages at $20,000 conflicted with the Jones Act and thus refusing to apply the state damage cap). Beyond this damage cap, it is not clear what other aspects of Maine law Defendant asserts would substantively differ from the general maritime law that Plaintiff seeks to apply. However, on the record presented and given Plaintiff's expressed interest in application of general maritime law, the Court concludes that the Maine Wrongful Death Act does not appear to supplement Plaintiff's general maritime claims as contemplated under Yamaha. See 516 U.S. at 216.

### D.  Comparative Negligence

At the prior conference of counsel, the Court had inquired as to the application of pure comparative negligence. At that time, all parties agreed that pure comparative negligence would apply at trial. Thus, the Court reaffirms that under the Court's application of general maritime law, it will instruct the jury regarding pure comparative negligence. See, e.g., Churchwell v. Bluegrass Marine, Inc., 444 F.3d 898, 903 & 908 (6th Cir. 2006). ("Maritime law espouses a system of comparative negligence, in which a plaintiff's own negligence does not bar recovery." Rather, "plaintiff's damages are reduced by the degree of fault [if any] the jury assigns to plaintiff's behavior."); Carey v. Bahama Cruise Lines, 864 F.2d 201, 206-08 (1st Cir. 1988) (Massachusetts

---

[4] This same Maine law caps punitive damages at $250,000. However, Plaintiff has agreed to dismiss the punitive damages claims in this case. See Order Dismissing Counts II & VI (ECF No. 148).

bar to recovery if plaintiff is more than 50% negligent incompatible with admiralty rule that contributory negligence only mitigates damages).

## IV.   CONCLUSION

As explained herein, Plaintiff's Motion for Application of General Maritime Law (ECF No. 130) is hereby GRANTED.

SO ORDERED.

/s/ George Z. Singal<br>United States District Judge

Dated this 22nd day of January, 2013.